

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | INDICTMENT |
| | : | |
| v. | : | <u>UNDER SEAL</u> |
| | : | |
| JOHNNIE FARROW, | : | CRIMINAL NO. 5:21-CR-26 |
| DEMETRIA BELL, and | : | |
| EARY FULLER | : | VIOLATIONS:   18 U.S.C. § 1349 |
| | : | 18 U.S.C. § 1344 |
| | : | 18 U.S.C. § 2 |
| | : | |

**THE GRAND JURY CHARGES:**

<u>COUNT ONE</u>
**(Conspiracy to Defraud a Financial Institution)**

**A. INTRODUCTION**

At all times material to this Information:

1. AgGeorgia Farm Credit (hereinafter "AgGeorgia") was a federally chartered member of the Farm Credit System, and was governed by the Farm Credit Act of 1972, as amended, and the regulations of the Farm Credit Administration.

2. AgGeorgia served approximately 79 Georgia counties with branches located throughout its territory, including an office located at 468 Perry Parkway, Perry, Georgia.

3. AgSouth Farm Credit (hereinafter "AgSouth") was a federally chartered member of the Farm Credit System, and was governed by the Farm Credit Act of 1972, as amended, and the regulations of the Farm Credit Administration.

4. AgSouth served portions of Georgia and South Carolina with branches located throughout its territory, including offices located at 26 South Main Street, Statesboro, Georgia and 302 Mims Road, Sylvania, Georgia.

5. As federally chartered members of the Farm Credit System, both AgGeorgia and AgSouth made loans to farmers, ranchers, and aquatic harvesters that satisfied the eligibility criteria that are imposed by the Farm Credit Act and Farm Credit Administration regulations.

6. William Spigener, III, (hereinafter "Spigener"), not indicted herein, was an employee and loan officer, and later Credit Analyst, of AgGeorgia. During this time of employment Spigener primarily, and at all times relevant in this Information, worked out of the Perry branch office. His duties included reviewing, processing, approving, and closing loan applications.

## B. THE CONSPIRACY AND ITS OBJECTS

Beginning sometime on or about January 1, 2018, the exact date being unknown, and continuing until on or about February 21, 2019, in the Macon Division of the Middle District of Georgia, and elsewhere within the jurisdiction of the Court,

**JOHNNIE FARROW,
DEMETRIA BELL, and
EARY FULLER**

Defendants herein, did knowingly combine, conspire, confederate, and agree with each other and with William Spigener, III, not indicted herein, to commit an offense against the United States, that is, to knowingly and willfully devise, execute, and attempt to execute a scheme and artifice to defraud and to obtain money, funds, credits, assets, and securities owned by and under the custody and control of AgGeorgia and AgSouth, financial institutions as defined under Title 18, United States Code, Section 20, by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Sections 1344 and 2.

### C. MANNER AND MEANS OF THE CONSPIRACY

The manner and means whereby the conspiracy was sought to be accomplished were as follows:

### JOHNNIE FARROW Loan

1. Spigener recruited **JOHNNIE FARROW** (hereinafter "**FARROW**") to pretend to be a potential borrower with AgGeorgia. Spigener agreed to provide **FARROW** with a portion of the loan proceeds in exchange for **FARROW** agreeing to use his personal identifying information on a loan application.

2. Spigener used **FARROW'S** information to create and submit a loan application to AgGeorgia. In doing so, Spigener created and submitted false financial information for **FARROW**. Spigener also created and submitted false information regarding the purchase of farm equipment. As a result of this false information, AgGeorgia approved a $74,400.00 loan, purportedly for **FARROW** to purchase farm equipment. In reality, **FARROW** did not purchase, and was not purchasing, farm equipment. All supporting documentation indicating to the contrary was created and submitted by Spigener.

3. On or about January 30, 2018, **FARROW** met with Spigener at the AgGeorgia office in Perry, Georgia for the closing on the loan. The Relationship Manager on the loan was not present at this closing and it was handled exclusively by Spigener. The Relationship Manager later signed the closing documents and was unaware that Spigener was involved in creating and submitted the loan documents. **FARROW** brought another unknown person with him to closing to sign the documents. **FARROW** was later asked to re-sign the documents and Spigener then forged **FARROW'S** signature.

4. As a result of this fraudulent loan application, AgGeorgia paid out a total of $72,430.00, not including any fees, to **FARROW**. The majority of these funds were transferred to Spigener with a portion going to **FARROW** for his role.

### DEMETRIA BELL Loans

5. Spigener was introduced to **DEMETRIA BELL** (hereinafter "**BELL**") through **FARROW**. Spigener also recruited **BELL** to pretend to be a potential borrower with AgGeorgia and AgSouth. Spigener agreed to provide **BELL** with a portion of the loan proceeds in exchange for **BELL** agreeing to use her personal identifying information on loan applications.

6. Spigener used **BELL'S** information to create and submit two loan applications to AgGeorgia and one loan application to AgSouth. In doing so, Spigener created and submitted false financial information for **BELL**. Spigener also created and submitted false information regarding the operation of a farm and the purchase of farm equipment. As a result of this false information, the following loans were approved:

    a. a $170,000.00 loan with AgGeorgia, purportedly for **BELL'S** farm operating expenses relating to crops;

    b. a $25,200.00 loan with AgGeorgia, purportedly for **BELL'S** farm operating expenses relating to crops; and

    c. a $72,250.00 loan with AgSouth, purportedly for **BELL** to purchase farm equipment.

In reality, **BELL** did not have any farmland or crops that required operating expenses, nor did she purchase, and was not purchasing, farm equipment. All supporting documentation indicating to the contrary was created and submitted by Spigener.

7. On or about March 21, 2018, **BELL** met with a Relationship Manager at the AgGeorgia office in Perry, Georgia for the closing on the first loan. This Relationship Manager was unaware that Spigener was involved in creating and submitting the loan documents.

8. On or about October 22, 2018, **BELL** met with a Relationship Manager and Spigener at the AgGeorgia office in Perry, Georgia for the closing on the second loan. This Relationship Manager was unaware that Spigener was involved in creating and submitting the loan documents.

9. On or about November 8, 2018, **BELL** met with a Loan Specialist at the AgSouth office in Sylvania, Georgia for closing on the third loan. Prior to this closing, the Regional Vice President and Loan Specialist at AgSouth had been told by Spigener that **BELL** had moved to AgSouth's territory and was therefore referring her to them for this loan. In reality, **BELL** did not move. Instead, Spigener decided to have this loan processed at AgSouth to avoid drawing attention at AgGeorgia.

10. As a result of these fraudulent loan applications, AgGeorgia paid out a total of $193,420.00, not including any fees, to **BELL** and AgSouth paid out a total of $70,740.00, not including any fees, to **BELL** The majority of these funds were transferred to Spigener with a portion going to **BELL** for her role.

### EARY FULLER Loans

11. Spigener was also introduced to **EARY FULLER** (hereinafter "**FULLER**") through **FARROW**. Spigener recruited **FULLER** to pretend to be a potential borrower with AgGeorgia and AgSouth. Spigener agreed to provide **FULLER** with a portion of the loan proceeds in exchange for **FULLER** agreeing to use his personal identifying information on loan applications.

12. Spigener used **FULLER'S** information to create and submit four loan applications to AgGeorgia and two loan applications to AgSouth. In doing so, Spigener created and submitted false financial information for **FULLER.** Spigener also created and submitted false information related to the purchase of cattle and farm equipment. As a result of this false information, the following loans were approved:

    a. a $40,225.00 loan with AgGeorgia, purportedly for **FULLER** to purchase cattle;

    b. a $75,600.00 loan with AgGeorgia, purportedly for **FULLER** to purchase farm equipment;

    c. a $56,700.00 loan with AgSouth, purportedly for **FULLER** to purchase farm equipment;

    d. a $46,800.00 loan with AgSouth, purportedly for **FULLER** to purchase farm equipment;

    e. a $28,348.00 loan with AgGeorgia, purportedly for **FULLER** to purchase a tractor; and

    f. a $18,140.00 loan with AgGeorgia, purportedly for **FULLER** to purchase farm equipment.

    In reality, **FULLER** did not have, nor did he purchase, any cattle, farm equipment, or tractors. All supporting documentation indicating to the contrary was created and submitted by Spigener.

13. On or about June 27, 2018, **FULLER** met with Spigener at the AgGeorgia office in Perry, Georgia for the closing on the first two loans. The Relationship Manager on the loan was not present at this closing and it was handled exclusively by Spigener. The Relationship

Manager later signed the closing documents and was unaware that Spigener was involved in creating and submitting the loan documents.

14. On or about September 18, 2018, **FULLER** met with a Regional Vice President of AgSouth at a fast food restaurant in Forsyth, Georgia for the closing on the third loan. This Regional Vice President was unaware that Spigener was involved in creating and submitting the loan documents.

15. On or about September 26, 2018, **FULLER** met with a Regional Vice President of AgSouth at a fast food restaurant in Forsyth, Georgia for the closing on the fourth loan. This Regional Vice President was unaware that Spigener was involved in creating and submitting the loan documents.

16. On or about October 9, 2018, **FULLER** met with Spigener at the AgGeorgia office in Perry, Georgia for the closing on the fifth loan. The Relationship Manager involved in signing the documents in this closing was unaware that Spigener was involved in creating and submitting the loan documents.

17. On or about December 11, 2018, **FULLER** met Spigener at the AgGeorgia office in Perry, Georgia for the closing on the sixth loan. The Relationship Manager involved in signing the documents in this closing was unaware that Spigener was involved in creating and submitting the loan documents.

18. As a result of these fraudulent loan applications, AgGeorgia paid out a total of $160,030.00, not including any fees, to **FULLER** and AgSouth paid out a total of $101,480.00, not including any fees, to **FULLER**. The majority of these funds were transferred to Spigener with a portion going to **FULLER** for his role.

All in violation of Title 18, United States Code, Sections 1349 and 2.

A TRUE BILL.

*/s/ Foreperson of the Grand Jury*
FOREPERSON OF THE GRAND JURY

PETER D. LEARY
ACTING UNITED STATES ATTORNEY
Presented by:

ELIZABETH S. HOWARD
ASSISTANT UNITED STATES ATTORNEY

Filed in open court this 12 day of May, AD 2021.

Deputy Clerk